ANTE EL TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
DEL DISTRITO DE COLORADO

Acción penal n.º 25-cr-00077-JLK-01

ESTADOS UNIDOS DE AMÉRICA,

Demandante,

contra

1. DARWIN VELIZ-GONZÁLEZ,
alias "Escopeta",

Acusado.

---

## ACUERDO DE DECLARACIÓN DE CULPABILIDAD

---

Los Estados Unidos de América (el Gobierno), por medio de Leah Perczak, fiscal adjunta de los Estados Unidos, y Garreth Winstead, fiscal adjunto de los Estados Unidos para el Distrito de Colorado, y el acusado, Darwin Veliz-González, personalmente y a través de su abogada, Lisa Fine Moses, presentan el siguiente acuerdo de declaración de culpabilidad de conformidad con la norma D.C.COLO.LCrR 11.1. El presente acuerdo vincula únicamente a la División Penal de la Fiscalía de los Estados Unidos para el Distrito de Colorado y al acusado.

### I. ACUERDO

**A. Acuerdo del acusado:**

El acusado se compromete a:

(1) declararse culpable de intento de secuestro, un delito de menor grado incluido en el cargo 1 de la acusación formal, en violación del artículo 1201(d) del título 18 del Código de los Estados Unidos;

(2) renunciar a determinados derechos de apelación y de ataque colateral, tal y como se explica en detalle a continuación.



COURT EXHIBIT
1a

**B. Obligaciones del Gobierno:**

El Gobierno se compromete a permitir que el acusado se declare culpable de intento de secuestro, un delito de menor grado incluido en el cargo 1 de la acusación formal.

Siempre que el acusado no incurra en conductas prohibidas ni incumpla de otro modo lo dispuesto en los artículos 3C1.1 y 3E1.1 de las Directrices Federales de Sentencias (USSG), comentario n.º 4, n.º 4 entre la declaración de culpabilidad y la imposición de la pena en este caso, el Gobierno acepta que el acusado reciba una reducción de dos niveles por aceptación de responsabilidad de conformidad con el § 3E1.1(a) de las Directrices de Sentencia de los Estados Unidos (USSG) y se compromete a presentar una petición solicitando que el acusado reciba una reducción de un nivel por aceptación de responsabilidad de conformidad con el § 3E1.1(b) de las Directrices de Sentencia de los Estados Unidos (USSG).

Si el acusado incurre en una conducta que implique la aplicación de los apartados 3C1.1, comentario n.º 4, de las Directrices de Sentencia de los Estados Unidos (USSG) entre la declaración de culpabilidad y la imposición de la pena en este caso, además de cualquier otra consecuencia, el Gobierno quedará liberado de sus obligaciones en virtud del acuerdo de declaración de culpabilidad, y el acusado no tendrá por ello derecho alguno a rescindir dicho acuerdo.

**C. Renuncia del acusado al recurso de apelación:**

El acusado es consciente de que el artículo 18 U.S.C. § 3742 le otorga el derecho a apelar la sentencia, incluida la forma en que se determina dicha sentencia. Entendiendo esto, y a cambio de las concesiones realizadas por el Gobierno en este acuerdo, el acusado renuncia, de forma consciente y voluntaria, al derecho a apelar cualquier asunto relacionado con este proceso,

condena o sentencia (incluida la orden de restitución), a menos que cumpla uno de los siguientes criterios:

(1) la sentencia exceda la pena máxima prevista en la ley de condena;

(2) el Gobierno apela la pena impuesta.

Si se cumple el primer criterio, el acusado solo podrá apelar la cuestión de en qué medida su pena excede la pena máxima prevista por la ley. Sin embargo, si se cumple el segundo criterio, el acusado podrá apelar por cualquier motivo que sea admisible en una apelación interpuesta tras una declaración de culpabilidad.

El acusado también renuncia, de forma consciente y voluntaria, al derecho a impugnar este proceso, la condena o la pena (incluida la orden de restitución) en cualquier ataque colateral (incluida, entre otras cosas, una petición presentada en virtud del artículo 2255 del título 28 del Código de los Estados Unidos). Esta cláusula de renuncia no impide que el acusado solicite las medidas de reparación que de otro modo estarían disponibles en un recurso incidental por cualquiera de los siguientes motivos:

(1) el acusado debería beneficiarse de un cambio explícitamente retroactivo en las directrices de imposición de penas o en la ley de imposición de penas;

(2) el acusado se vio privado de la asistencia letrada efectiva; o

(3) el acusado se vio perjudicado por una conducta indebida de la fiscalía.

Los Estados Unidos se comprometen a no alegar una excepción procesal frente a una reclamación por conducta indebida de la fiscalía planteada en una petición en virtud del artículo 2255 basada en que el acusado no planteó esa cuestión en la apelación directa.

El acusado también renuncia al derecho a apelar cualquier pena impuesta por debajo o dentro del rango de las Directrices tras la revocación de la libertad supervisada en este número de causa, salvo en el caso de que el acusado se oponga sin éxito al grado de infracción aplicado por

el tribunal durante el procedimiento de revocación ante el tribunal de distrito. En tal caso, esta renuncia no se aplica y el acusado podrá apelar la pena impuesta tras la revocación de la libertad supervisada, incluso si dicha pena es inferior o se encuentra dentro del rango de las Directrices calculado por el tribunal.

El acusado también renuncia al derecho a apelar la denegación de cualquier petición presentada en virtud del artículo 18 U.S.C. § 3582(c)(1)(A) cuando dicha denegación se base, en cualquier parte, en la determinación del tribunal de que no se justifica una reducción de la pena con arreglo a los factores establecidos en el artículo 18 U.S.C. § 3553(a). Esta renuncia no se aplica a una apelación de una petición denegada en virtud del § 3582(c)(1)(A)(i) cuando el tribunal de distrito, al denegar la petición por motivos del § 3553(a), no haya tenido en cuenta los hechos que supuestamente establecen circunstancias extraordinarias y apremiantes como parte de su análisis del § 3553(a).

## II. ELEMENTOS DEL DELITO O DELITOS

Las partes coinciden en que los elementos del delito de intento de secuestro son los siguientes:

**Cargo primero: 18 U.S.C. § 1201(a)(1) y (d)**

*Primero:* el acusado, actuando a sabiendas en contravención de la ley, intentó secuestrar a la persona descrita en la acusación al apresarla, confinarla, secuestrarla y retenerla para obtener un rescate, tal y como se le imputa;

*Segundo:* el secuestro se llevó a cabo con algún propósito o beneficio; y

*Tercero:* el acusado utilizó un medio, instalación o instrumento de comercio interestatal o exterior para cometer el delito.

Instrucciones modelo para el jurado en materia penal del Décimo Circuito, edición de 2021

## III. PENA MÁXIMA PREVISTA POR LA LEY

La pena máxima por intento de secuestro, el delito de menor grado incluido en el cargo 1 de la acusación, es: no más de 20 años de prisión; un período máximo de libertad supervisada de tres años; una multa máxima de $500,000; y una tasa obligatoria de $100 para el fondo de víctimas.

## IV. CONSECUENCIAS COLATERALES

La condena puede acarrear la pérdida de derechos civiles, incluidos, entre otros, los derechos a poseer armas de fuego, votar, ocupar un cargo electivo y formar parte de un jurado.

Es probable que el acusado sea deportado y expulsado de los Estados Unidos, o recluido indefinidamente si no hay ningún país al que pueda ser deportado, que se le deniegue la admisión futura en los Estados Unidos y/o que se le deniegue la ciudadanía. Es probable que se revoque cualquier estatus que el acusado tenga dentro de los Estados Unidos.

## V. ACUERDO SOBRE LOS HECHOS

A continuación se exponen los hechos en los que se basa esta declaración de culpabilidad. Dado que el Tribunal debe, como parte de su metodología de imposición de la pena, calcular el rango de las directrices consultivas para el delito por el que se ha dictado la condena, considerar la conducta relevante y tener en cuenta los demás factores establecidos en el artículo 3553 del título 18 del Código de los Estados Unidos, es posible que se incluyan a continuación hechos adicionales que sean pertinentes para dichas consideraciones y cálculos. En la medida en que las partes discrepen sobre los hechos que se exponen a continuación, la estipulación de hechos identifica cuáles son los hechos que se sabe que están en disputa en el momento de la firma del acuerdo de declaración de culpabilidad.

Esta estipulación de hechos no impide a ninguna de las partes presentar hechos adicionales no contradictorios que sean relevantes para el cálculo de la pena por parte del Tribunal, para otros factores del artículo 3553 del título 18 del Código de los Estados Unidos (18 U.S.C. § 3553) o para la decisión general del Tribunal sobre la imposición de la pena.

Las partes estipulan que el Gobierno podría probar los siguientes hechos en el juicio.

El 16 de octubre de 2024, el Departamento de Policía de Denver recibió una llamada de emergencia en la que se informaba de que alguien había sido secuestrado en el 535 S. Hazel Court, en Denver, Colorado. Esta dirección se encuentra dentro del distrito estatal y federal de Colorado, había sido alquilada por la esposa del acusado y era la residencia de este. Los agentes acudieron al lugar a las 10:30 pm y llevaron a cabo un registro visual limitado de la vivienda. En el interior de la vivienda, los agentes se encontraron con Darwin Veliz-González, quien fue detenido por cargos no relacionados con este caso. Los agentes también observaron a Jefferson Balza-Delfín escondido bajo las sábanas de la cama de un niño en uno de los dormitorios, quien se identificó a los agentes por su nombre. Durante la inspección de bienestar, los agentes no vieron a ninguna persona en situación de peligro, aunque no registraron todos los dormitorios de la vivienda.

El 17 de octubre de 2024, una persona con las iniciales L.G.-M. entró en una comisaría de Denver aproximadamente a las 8:00 a. m. para denunciar que había sido víctima de un secuestro y una agresión que tuvieron lugar en el 535 S. Hazel Court, en Denver, Colorado. L.G.-M. mostró a los agentes que le faltaba el dedo meñique de la mano derecha y les contó que, durante el secuestro, los secuestradores le habían cortado el dedo.

L.G.-M. llevaba viviendo en el 535 de S. Hazel Court aproximadamente un mes y había estado pagando a la esposa del acusado por alquilar una habitación en la casa. L.G.-M. conoció a

"El Negro", "El Gocho" y "El Flaco" en un Home Depot y los invitó a compartir su habitación y a participar en el pago del alquiler.

L.G.-M. declaró que cuatro de sus compañeros de piso lo habían secuestrado, torturado y agredido. L.G.-M. identificó a los hombres por sus apodos: "El Negro", "El Gocho", "El Flaco" y "Escopeta". L.G.-M. dijo que el incidente comenzó cuando "Gocho", posteriormente identificado como el acusado, le pidió prestado su teléfono celular y vio una fotografía del padre de L.G.-M. con un uniforme de la policía venezolana. Los hombres le preguntaron a L.G.-M. si su padre era policía en Venezuela, y L.G.-M. confirmó que sí. L.G.-M. también había trabajado como oficial de policía en Venezuela. En respuesta a esta información, L.G.-M. declaró que los hombres lo secuestraron en su dormitorio y lo ataron con una cuerda. L.G.-M. permaneció retenido sin comida y con muy poca agua durante varios días. El 16 de octubre de 2024, los hombres comenzaron a torturar a L.G.-M. y grabaron sus actos con el fin de enviar demandas de rescate a la esposa y la familia de L.G.-M. en Venezuela.

Durante el secuestro, "El Flaco" se puso en contacto con los líderes internacionales de la pandilla Tren de Aragua (TdA) y consultó con ellos sobre el secuestro. El grupo acordó una cantidad de rescate y comenzó a torturar a L.G.-M. con el fin de garantizar el pago del rescate. El grupo estranguló a L.G.-M. con una cuerda hasta que estuvo a punto de perder el conocimiento y lo grabó con un teléfono celular. El grupo también intentó ahogar a L.G.-M. sumergiéndole la cabeza en un cubo de agua durante 30 segundos o más cada vez, repetidamente. Esto también fue grabado con un teléfono celular. A L.G.-M. también le golpearon en la cabeza o le "golpearon con la culata de una pistola" y le amenazaron con un arma de fuego. Estos vídeos fueron enviados a la esposa de L.G.-M. junto con una demanda de rescate de $30,000 a cambio de la liberación de L.G.-M. a través del celular por parte de "El

Negro" y "El Flaco". Los vídeos también fueron enviados a los líderes de TdA a través del celular, quienes colaboraron en la exigencia de dinero a la familia de L.G.-M. No se pagó ningún rescate en ningún momento durante el secuestro.

Cuando la familia de L.G.-M. no pagó el rescate exigido, L.G.-M. escuchó a los hombres hablar de cortarle un dedo. L.G.-M. oyó a un hombre decir: "Yo lo haré", y entonces los hombres entraron en la habitación. El coacusado Balza-Delfín utilizó un par de alicates para cortarle el dedo meñique a L.G.-M., lo cual también fue filmado. L.G.-M. sangró profusamente durante varias horas y sufrió un dolor intenso. Durante todo el proceso de tortura de L.G.-M., los acusados llevaban guantes y se los cambiaban con frecuencia. Tiraron toda su ropa, los guantes y las vendas ensangrentadas de las heridas de L.G.-M.

L.G.-M. seguía atado cuando los hombres oyeron llegar a la policía el 16 de octubre de 2024 para realizar la visita de control de bienestar en la residencia. L.G.-M. estaba escondido en una habitación dentro de la casa y tenía demasiado miedo como para darse a conocer a las fuerzas del orden cuando llegaron. Unas horas después de que la policía realizara la visita de control, el grupo discutió la posibilidad de llevar a L.G.-M. a las montañas para matarlo, pero en su lugar, "El Negro", "Gocho" y "Flaco" huyeron de la residencia. L.G.-M. logró escapar de la casa y ponerse en contacto con un amigo para pedir ayuda a la policía.

L.G.-M. y otras personas identificaron a "Escopeta" como Darwin Veliz-González. L.G.-M. y otras personas identificaron a "El Negro" como José Pineda-Moreno. L.G.-M. y otras personas identificaron a "Gocho" como el acusado, Jefferson Balza-Delfín. "El Flaco" fue identificado como Yender Campos-Malave por L.G.-M. y otros. El 17 de octubre de 2024, los investigadores utilizaron un rastreo de emergencia para localizar el teléfono celular de L.G.-M., que él creía que los cuatro hombres se habían llevado consigo cuando huyeron de la casa de

South Hazel Court. El teléfono de L.G.-M. parecía estar ubicado en el 3703 West Walsh Place, en Denver, Colorado. Los agentes acudieron a ese lugar y observaron dos vehículos que también se habían visto frente al 535 South Hazel Court durante la visita de control de bienestar del 16 de octubre de 2024. Los coacusados Jefferson Balza-Delfin, José Piñeda-Moreno y Yender Campos-Malave fueron localizados y contactados en el 3703 West Walsh Place y parecían estar realizando trabajos de construcción en la casa. Los agentes localizaron el teléfono celular de L.G.-M. en un arbusto en el 3703 West Walsh Place y otros dos teléfonos celulares en un contenedor de basura frente a esa dirección. El análisis del teléfono celular de L.G.-M. reveló una huella latente en el dispositivo que se determinó que coincidía con la del coacusado Balza-Delfin.

L.G.-M. identificó al acusado a través de una fotografía y confirmó que este había participado en su secuestro. El acusado y sus coacusados utilizaron un medio de comercio interestatal y exterior durante el secuestro, concretamente, un teléfono celular. El acusado tenía la intención de obtener el pago de un rescate a cambio de la liberación de la víctima.

## VI. CÁLCULO DE LAS DIRECTRICES RECOMENDADAS

Las partes entienden que la imposición de una pena en este asunto se rige por el artículo 18 U.S.C. § 3553. Para determinar la pena concreta que debe imponerse, el Tribunal está obligado a considerar siete factores. Uno de esos factores es el rango de penas calculado por el Tribunal con arreglo a las directrices consultivas emitidas por la Comisión de Sentencias de los Estados Unidos. Con el fin de ayudar al Tribunal a este respecto, las partes exponen a continuación su estimación del rango de las directrices consultivas exigido por las Directrices de Sentencias de los Estados Unidos. En la medida en que las partes discrepan sobre los cálculos de las directrices, la exposición que figura a continuación identifica las cuestiones que son objeto de

controversia.

El cálculo de las directrices que figura a continuación es la estimación de buena fe de las partes, pero no es más que una estimación. Las partes entienden que el Gobierno tiene la obligación independiente de ayudar al Tribunal a determinar con precisión el rango correcto de las directrices. A tal fin, el Gobierno puede alegar que los hechos identificados en el informe previo a la sentencia, o identificados de otro modo durante el proceso de imposición de la pena, afectan a la estimación que figura a continuación.

a) En virtud de la sección 2A4.1(a), el nivel básico de delito es 32.

b) En virtud de la sección 2A4.1(b)(1), se aplica un aumento de seis niveles por haberse exigido un rescate.

c) En virtud de la sección 2A4.1(b)(2), se aplica un aumento de cuatro niveles, ya que la víctima sufrió lesiones permanentes.

d) En virtud de la sección 2A4.1(b)(3), se aplica un aumento de dos niveles por haberse utilizado un arma peligrosa.

e) El nivel de delito ajustado es 44.

f) En virtud de la sección 3E1.1, el acusado debe recibir una reducción de tres niveles por haber aceptado su responsabilidad de manera oportuna. El nivel de delito total resultante es 41.

g) Las partes entienden que el cálculo de los antecedentes penales del acusado es provisional y se basa en sus condenas anteriores. Las partes consideran que el acusado se encuentra en la categoría I de antecedentes penales.

h) No se aplican los ajustes por reincidente profesional, medio de vida delictivo o delincuente profesional armado.

i) El rango orientativo de la pena resultante de estos cálculos es **de 324 a 405** meses. Sin embargo, para ser lo más precisos posible, dado que la categoría de antecedentes penales no está determinada en este momento, los niveles de delito estimados anteriormente podrían dar lugar a un rango que oscilaría entre **324 y 405** meses (límite inferior de la Categoría I) y **360 meses – cadena perpetua** (límite superior de la Categoría VI). El rango de la directriz no excedería, en ningún caso, los máximos legales

acumulativos aplicables a los cargos por los que se ha dictado condena.

j) De conformidad con la directriz § 5E1.2, suponiendo que el nivel de delito estimado anteriormente sea correcto, el rango de la multa por este delito sería de $50,000 a $500,000, más los intereses y sanciones aplicables.

k) De conformidad con la directriz § 5D1.2, si el Tribunal impone un período de libertad supervisada, dicho período deberá ser de al menos un año, pero no superior a tres años.

Las partes entienden que el Tribunal es libre, tras considerar y aplicar adecuadamente todos los factores del artículo 18 U.S.C. § 3553, de imponer la pena razonable que considere apropiada en el ejercicio de su discrecionalidad, y que dicha pena puede ser inferior a la prevista por las directrices consultivas (en duración o forma), dentro del rango de las directrices consultivas, o por encima de dicho rango hasta e incluyendo el encarcelamiento por el plazo máximo previsto por la ley, independientemente de cualquier cálculo o posición de cualquiera de las partes sobre cualquier factor del artículo 18 U.S.C. § 3553.

## VII. ACUERDO COMPLETO

El acuerdo presentado ante el Tribunal constituye el acuerdo completo. No existen otras promesas, acuerdos o "acuerdos paralelos", términos, condiciones, entendimientos o garantías, ya sean expresos o implícitos. Al celebrar este acuerdo, ni el Gobierno ni el acusado se han basado, ni se basan, en ningún otro término, promesa, condición o garantía.

Fecha: 5/7/26 [signature]
Darwin Veliz-González
Acusado

Fecha: 5/7/26 [signature]
Lisa Fine Moses

Abogada de la demandada

Fecha: 5/7/26 ______________________________

Leah Perezak
Fiscal adjunta de los Estados Unidos

**CERTIFICATION BY TRANSLATOR**

I, Sarah Guth Sala, do hereby attest that I am a Spanish / English interpreter certified by the Administrative Office of the United States Courts. I further attest that I have personally prepared the attached translation of Statement in Support of Plea of Guilty without a Plea Agreement in the case of United States v. Darwin Veliz-Gonzalez, Case No. 25-cr-00077-JLK-01, by reviewing the original English language document and making all necessary and appropriate changes to the Spanish language version that is readily available to the courts, and that, to the best of my knowledge and belief, it is a true and accurate translation of the original.