**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 25-cr-00077-JLK

UNITED STATES OF AMERICA,
Plaintiff,
v.
1. DARWIN VELIZ-GONZALEZ

Defendant.

---

**OBJECTIONS AND RESPONSE TO THE PRESENTENCE REPORT FOR MR. VELIZ-GONZALEZ (DOC. 125)**

---

Mr. Veliz-Gonzalez, by and through counsel, submits the following objections and responses to the Pre-Sentence Investigation Report (Doc. 125) pursuant to Rule 32:

**OBJECTION TO GANG MEMBERSHIP DESIGNATION**

1. Page 2 of the presentence investigation report (PSIR Doc. 125) under "Alternate IDs," the probation department states that Mr. Veliz-Gonzales has gang membership with Tren De Aragua. This assertion is mentioned and referenced throughout portions of the PSIR. Mr. Veliz-Gonzales objects to this designation and the references within the PSIR.

2. When reviewing the information within the PSIR regarding gang connections, the connections to Tren De Aragua (TdA) come from speculation, "beliefs," and co-defendants.

3. Cooperating witnesses notified law enforcement that the other three defendants were TdA. There were witnesses that claimed that they believed that Mr. Veliz-Gonzalez was TdA, but there was no evidence of such.

4. Any connections to TdA are found on co-defendants phone, but not on or from Mr. Veliz-Gonzalez.
    a. Mr. Campos-Malave aka "El Flaco" contacted international leadership of TdA on his phone. (Doc. 125, page 4, ¶13)
    b. Videos of the L.G.-M's torture were sent via cell phone by Mr. Campos-Malave and Mr. Pineda-Moreno aka "El Negro." (Doc. 125, page 4, ¶13)
    c. The videos of the torturing and kidnapping were located on a phone associated with Mr. Campos-Malave. (Doc. 125, page 7, ¶28)

        i. Mr. Veliz-Gonzalez does not appear in any photographs or videos on this phone.

   d. Mr. Campos-Malave's phone connected him to leadership of the TdA.
   e. Videos of the torturing were found on a phone associated with Mr. Pineda-Moreno. This phone also contained photographs of that are connections to TdA .(Doc. 125, page 7, ¶28)
        i. Mr. Veliz-Gonzalez does not appear in photographs or videos on this phone.
   f. Mr. Pineda-Moreno's cell phone had a saved contact for "Chino San Vicente" and a text message wishing Chino San Vicente a happy birthday.

5. Mr. Veliz-Gonzalez denies being a member of TdA. In fact, his brother was brutally murdered by TdA. His home being taken over by TdA, resulting in his family having to flee the country.
   a. This information was verified by Mr. Veliz-Gonzalez' sister, Maile Joseline Veliz Gonzalez. (Attachment A)

6. Mr. Veliz-Gonzalez does not have any of the following that would connect him to TdA:
   a. He has no tattoos that symbolize membership of TdA. There are no crowns, no stars, no weapons. His tattoos are related to his faith or family members. Paragraph 75 outlines some of the tattoos on Mr. Veliz-Gonzalez.
   b. There was no discovery of any social media connections to TdA.
   c. There was nothing found during the search of Mr. Veliz-Gonzalez' room that would connect him to TdA.
   d. There are no photographs within discovery that connect Mr. Veliz-Gonzalez to TdA.

7. Per FDC, as noted in Doc. 125, page 3, ¶5, stated that Mr. Veliz-Gonzalez has no gang affiliation. If Mr. Veliz-Gonzalez was TdA, the staff at FDC, who are trained to pay attention to gang connections, would have documented such.

**PART A. THE OFFENSE**

**<u>Charge(s) and Conviction(s)</u>**

8. Paragraph 5 of Doc. 125 outlines Mr. Veliz-Gonzalez' behavior while at the Federal Detention Center (FDC). Prior to his transfer to FDC, Mr. Veliz-Gonzalez was detained at the Teller County Jail. Mr. Veliz-Gonzalez did not have any behavioral issues while housed there. Unfortunately, Teller County does not provide educational or self-improvement programs. However, once he was transferred to FDC, he availed himself to the programs and course work that they offered.

9. While at FDC, Mr. Veliz-Gonzalez has been studying to take his GED. He has also completed the following courses:
   a. Criminal thinking
   b. Surrounding yourself with support
   c. Healthy sleep habits

**Additional Information**

10. Page 5, ¶18 states that L.G.-M. was renting a room at Hazel Court from Mr. Veliz-Gonzalez and his wife. This is not accurate. L.G.-M. does not state that he rented the room from Mr. Veliz-Gonzalez. Mr. Veliz-Gonzalez was not on the lease and was not staying in the home when L.G.-M. moved in.

11. There are allegations that Mr. Veliz-Gonzalez provided the gun that Mr. Campos-Malave hit L.G.-M. in the head with the weapon while Mr. Pineda-Moreno pulled on the rope around his neck. Mr. Veliz-Gonzalez denies this. According to an interview with one of the men that accompanied L.G.-M. to the police station, the other men (the co-defendants) were friends with L.G.-M. and walked around with guns in their waistband.

**Offense Level Computation**

**OBJECTION TO GUIDELINE CALCULATION**

12. Mr. Veliz-Gonzalez objects to the 2-point increase proposed by the probation department pursuant to U.S.S.G. § 3B1.1(c) as outlined and argued in paragraphs 45 and 46.

13. U.S.S.G. § 3B1.1 allows for an increase to the offense level, depending on the defendant's aggravating role in the offense. U.S.S.G. § 3B1.1(c) which requires that the "defendant was an organizer, leader, manager, or supervisor in criminal activity other than described in (a) or (b), increase by 2 levels."

14. It is the Government's burden to prove that a defendant should receive an aggravating role adjustment. *United States v. McDonald,* 43 F.4th 1090, 1095 (10th Cir. 2022); *United States v. Farnsworth,* 92 F.3d 1001 (10th Cir. 1996)

15. "To be a manager or supervisor under that subsection, a defendant must have 'exercised some degree of control over others' involved in the commission of the crime or 'must have been responsible for organizing others' for the purpose of carrying out the offense." *United States v. Hunsaker,* 65 F.4th 1223 at 1229 (10th Cir. 2023) citing *United States v. Roberts*, 14 F.3d 502 at 523 (10th Cir 1993) (quoting *Reid,* 911 F.2d at 1464).

16. "[T]his court has consistently interpreted the 'manager/supervisor' role as one requiring the defendant to exercise some degree of 'decision-making authority,' 'control,' or 'organizational authority' over a subordinate participant in the offense." *United States v. Zar,* 790 F.3d 1036 at 1058 (10th Cir. 2015)

17. Mr. Veliz-Gonzalez did not recruit the co-defendants. L.G.-M. met Mr. Pineda-Moreno, Mr. Blaza-Delfin, and Mr. Campos-Malave at Home Depot and asked that they share a room with him. It was L.G.-M. that invited them to live in the home, not Mr. Veliz-Gonzalez.

18. Mr. Veliz-Gonzalez did not own or manage the home. Karen Soto was the individual on the lease and was the person that decided to rent out rooms to others. Mr. L.G.-M. was renting a room from Karen Soto, not from Mr. Veliz-Gonzalez as asserted in ¶18. The discovery consistently references that the men rented the room from the woman – Ms. Soto. Further, there is information that Mr. Veliz-Gonzalez was not staying at the home when L.G.-M. moved in or when he invited the other co-defendants to move in.

19. At the time that L.G.-M. invited these men to share a room with him, Mr. Veliz-Gonzalez was not staying at the home. Mr. Veliz-Gonzalez and Ms. Soto were involved in a domestic dispute. After that dispute, Mr. Veliz-Gonzalez moved out of the home and stayed away from the home and Ms. Soto. Mr. Veliz-Gonzalez returned to the Hazel Court home shortly before the incident in this case.

20. When Mr. Veliz-Gonzalez returned to the home, L.G.-M. and the other three men were living in the home. This information was provided by "Bryan," one of the individuals that picked L.G.-M. up from the home. He told law enforcement that when Mr. Veliz-Gonzlez returned to the home, the three that lived with L.G.-M. (the other co-defendants) did not want Mr. Veliz-Gonzalez to live there.

21. Mr. Veliz-Gonzalez did not know L.G.-M., Mr. Pineda-Moreno, Mr. Balza-Delfin, or Mr. Campos-Malave prior to his return to the home. This is consistent with the evidence collected by law enforcement. There are no contacts, photos, or references of Mr. Veliz-Gonzalez in the victim or co-defendant's phones or in any of the co-defendant's social media accounts.

22. Mr. Veliz-Gonzalez had no communication or connection to TdA leadership. All communication was done at the initiation of Mr. Campos-Malave and Mr. Pineda-Moreno. It was the phones of these individuals that sent the videos, communicated with members of TdA, not Mr. Veliz-Gonzalez.

23. Mr. Veliz-Gonzalez did not ever communicate any ransom demands. All of this was done by the others.

24. Mr. Veliz-Gonzalez did not physically torture L.G.-M. and disagrees with the assertion that he provided the weapons involved.

25. As noted in ¶¶15 and 24, the other co-defendants discussed taking L.G.-M. and killing him. This conversation occurred after the Denver Police officers left the home. Mr. Veliz-Gonzalez was arrested by law enforcement and was not in the home during these discussions.

26. As Mr. Veliz-Gonzalez stated during his plea, Mr. Veliz-Gonzalez did participate in the beginning of the kidnapping but was at work during significant portions of the incident. Mr. Veliz-Gonzalez was working for Jose Gonzalez as a helper at a mechanic and tire shop.

27. Based upon the evidence in this case, the evidence does not support a 2-level aggravated role for Mr. Veliz-Gonzalez.

28. The total offense level should be 41.

## PART C: OFFENDER CHARACTERISTICS

### Home and Neighborhood

29. Tren De Aragua killed many of Mr. Veliz-Gonalez' family members, including his brother. They also took all his family's land, home and belongings. His family has all fled Venezuela to flee from TdA.

### Military History

30. Mr. Veliz-Gonzalez does not generally discuss his ties to the military; thus Ms. Soto was not aware of his service. Given the political situation in Venezuela, he believes that it is best to not share details of this part of his life.

## JUSTIFICATION

31. The probation department's justification includes argument that Mr. Veliz-Gonzalez played an aggravated role in this offense. Mr. Veliz-Gonzalez maintains his objections to these assertions as outlined in this response.

32. The probation report also uses the dismissed domestic violence case as a justification for the position that he should receive a 240-month sentence. The Denver District Attorney's Office decided to dismiss this case. The matter is sealed pursuant to Colorado Revised Statute 24-72-705.

33. Mr. Veliz-Gonzalez objects to the use of this dismissed and sealed case as justification or consideration for the sentence in this case.

**CONCLUSION**

34. Mr. Veliz-Gonzalez understands the seriousness of the offense in this matter. The statutory maximum for this plea is 240 months and therefore there must be a variant sentence from the United States Sentencing Guideline Range.

35. Mr. Veliz-Gonzalez is requesting that this Court impose a sentence of 144 months.

Respectfully submitted,

/s/ Lisa Fine Moses
Lisa Fine Moses,
5200 DTC Pkwy Suite 200
Greenwood Village, CO 80111
P: 720/644-5342
F: 720/489-3810
lisa@lfmdefense.com
Attorney for Darwin Veliz-Gonzalez

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this Tuesday, July 14, 2026, a true and correct copy of the above and foregoing was filed with the CM/ECF filing system and by email.

All Counsel of Record

/s/ Jessica Hosler
Paralegal
LFM Defense