**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Action No. 25-cr-00077-JLK - 3

UNITED STATES OF AMERICA,

Plaintiff,

v.

3. JEFFERSON BALZA-DELFIN,
a/k/a "Gocho"

Defendant.

---

**UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT [Doc. 124]**

---

The United States of America, by and through its attorneys, Peter McNeilly, United States Attorney for the District of Colorado, and undersigned counsel, respectfully responds to the defendant's Objections to the Presentence Investigation Report [Doc. 124]. The defendant objects to the defendant's gang affiliation listed in the Presentence Investigation Report ("PSIR"), provides clarification of the defendant's educational course completions and makes requests related to supervised release. Each objection and clarification will be addressed in turn.

**<u>Objection 1: Tren de Aragua gang affiliation</u>**

The PSIR notes that the defendant is affiliated with the Tren de Aragua (TdA) gang and accurately recites the stipulated and additional facts that describe the role of TdA leadership in the kidnapping and torture of L.G.-M. *See* Doc. 115, ¶¶ 6 – 31. The defendant states that he is not a member of the TdA gang. Doc. 124, p. 1. The defendant seems to concede that his co-defendants are members of TdA and does not contest that the crime was committed with and for

high-level TdA leadership. He does not object to any of the additional facts that describe the involvement of very high-level leadership within TdA in the kidnapping and extortion of L.G.-M., and does not contest that this crime was committed to enrich TdA leadership. Rather, the defendant asserts that he is not a member of TdA. The defendant's gang affiliation is clear based on the facts of the case.

After L.G.-M. managed to escape his kidnapping and confinement at the hands of the four co-defendants, he immediately went to a local police station to report the kidnapping and mutilation he had suffered. Doc. 115, ¶ 10. L.G.-M. described being kidnapped at gunpoint by the four co-defendants, tortured, starved and mutilated. *Id.* at ¶ 11. As the investigation progressed, it became clear that TdA affiliation was the motivation for the kidnapping, ransom and torture of L.G.-M. L.G.-M. noted that the four co-defendants had borrowed his phone a few days before the kidnapping occurred, and had seen a picture of his father in a Venezuelan police uniform. *Id.* The co-defendants asked L.G.-M. about the picture, and L.G.-M. explained that both he and his father had been police officers in Venezuela. As a result, the four men formulated a plan to kidnap, torture and ransom L.G.-M. in an attempt to secure payments from his family. L.G.-M. and another witness to the kidnapping, R.F.-V., explained to law enforcement that Venezuelan law enforcement had previously killed members of the TdA gang, and that there was significant animosity between the Venezuelan police and TdA members. *See* Exhibit 1[1].

Further, L.G.-M. described to law enforcement that he was forced to participate in several video calls with TdA leadership, initiated by the four kidnapping co-defendants while L.G.-M. was being held. *See* Exhibit 2[2]. L.G.-M. stated that while he was held by the four co-defendants,

[1] Exhibit 1 was produced in discovery at INV_000500-INV_000503
[2] Exhibit 2 was produced in discovery at INV_0001855- INV_0001859

that they called known TdA leaders "Chino San Vicente" and "Nino Guerrero." *Id.* at p. 1-3. "Chino San Vicente" is a known alias of TdA leader Brawins Dominique Suarez-Villegas. Suarez-Villegas is a high-level TdA leader responsible for TdA activity in Bogota, Colombia. Suarez-Villegas maintained contact with a number of TdA associates from Colombia who made their way to the United States, and is known to have directed TdA activity within the United States. L.G.-M. stated that "Chino San Vicente" had contact with the kidnapping group via video calls, and that "Chino San Vicente" himself threatened L.G.-M. that if he didn't pay the ransom, the kidnapping co-defendants would kill him. *Id.* at p. 2.

L.G.-M. added that he knew the "Chino San Vicente" was in fact the person on the video call because he saw news footage of Suarez-Villegas (a/k/a "Chino San Vicente") being arrested in Colombia many months after his kidnapping, and recognized him as "Chino San Vicente." *Id.* at p. 2.

L.G.-M. also stated that the four co-defendants spoke with TdA leader "Nino Guerrero" during the kidnapping, also via WhatsApp. *Id.* L.G-M. heard Nino Guerrero tell defendant Veliz-Gonzalez that they should demand a $30,000 ransom payment for the release of L.G.-M., and if the ransom was not paid, the group should kill him. *Id.* This confirmed by the statement of R.F.-V., who was present inside the home where L.G.-M. was kidnapped during large portions of the kidnapping. *See* Exhibit 1. R.F.-V. was interviewed by law enforcement on the day that he assisted L.G.-M. in escaping his confinement. *Id.* R.F.-V. stated that the kidnapping co-defendants called "Nino Guerrero" during the kidnapping and that he also called L,G.-M.'s wife to demand ransom payments directly. *Id.*

R.F.-V. noted that the co-defendants had to first contact another leader named "El Viejo," who then contacted Nino Guerrero. *Id.* at p. 3. R.F.-V. stated that the co-defendants contacted

"El Viejo" via WhatsApp on a video call, who then added Guerrero to the call. "El Viejo" is a known alias for Giovanni Vicente Mosquera Serrano, a high-ranking TdA leader just beneath Nino Guerrero in rank[3], believed to have been in Venezuela or Colombia during the kidnapping.

The statements of L.G.-M. and R.F.-V. that the kidnapping co-defendants were in direct contact with senior members of the TdA gang were corroborated by cellphone data extracted from defendant Campos-Malave's phone. On Campos-Malave's cellphone, investigators located a contact saved under the name "Chino San Vicente." Notably, Campos-Malave sent a "Happy Birthday" message to "Chino San Vicente," on the date of Brawins Suarez-Villegas' birthday, further confirming that members of the kidnapping group were in direct, reliable contact with high-ranking members of TdA.

The defendant's claim that he is uninvolved and unaffiliated with the TdA gang is unavailing. The four co-defendants worked together to kidnap, confine, torture, ransom and mutilate L.G.-M. in order to secure a ransom payment for themselves and high-level, notorious members of the TdA gang. In fact, the co-defendants were so well connected with TdA leadership that they had ready, reliable access to some of the highest ranking TdA members in the world, "Nino Guerrero" and "El Viejo." These leaders have been in hiding in South America for many years and are accessible only by trusted gang members. Further, this crime appears to have been motivated by animosity between TdA members and Venezuelan law enforcement.

While the defendant is adamant that he is not a member of TdA, all of the evidence about the motive and completion of the crime suggests otherwise. The defendant was in fact so strongly affiliated with TdA that when "Nino Guerrero" gave the group an order to cut off L.G.-M.'s finger if the ransom remained unpaid, the defendant volunteered to obey this order and cut

[3] https://www.state.gov/reward-for-information-giovanny-san-vicente

L.G.-M.'s finger off. The Court has ample evidence to find that this crime was committed on behalf of and in concert with TdA leadership, by members of TdA who were so well connected that they had unfettered access to leadership. The defendant's blanket statement that he is not affiliated with TdA is contradicted by the evidence in this case, and the objection should be overruled.

**Objection 2 – Educational Courses**

The government has no additional information to provide and takes no position on the defendant's clarification of his educational coursework.

**Objection 3 – Supervised Release Conditions**

The Court need take no action on the defendant's request. The Court can impose the conditions of supervision recommended in the PSIR, and if, in the future, the defendant is removed from the United States, any potential violation of supervised release can be addressed at that time, when the matter is ripe for the Court's consideration.

Respectfully submitted,

PETER MCNEILLY

United States Attorney

*s/ Leah Perczak*
By: Leah Perczak
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
E-mail: leah.perczak@usdoj.gov
Attorney for the Government

**CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2026, I electronically filed the foregoing **UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT [Doc. 124]** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the parties on record.

*s/ Leah Perczak*
Leah Perczak
Assistant United States Attorney